UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| SUMMER E. ATKINSON, | ) |
| Plaintiff, | ) No. CV-10-00236-CI |
| | ) |
| v. | ) ORDER GRANTING DEFENDANT'S |
| | ) MOTION FOR SUMMARY JUDGMENT |
| MICHAEL J. ASTRUE, | ) AND DENYING PLAINTIFF'S |
| Commissioner of Social Security, | ) MOTION FOR SUMMARY JUDGMENT |
| | ) |
| Defendant. | ) |

BEFORE THE COURT are cross-Motions for Summary Judgment. (ECF No. 13, 19.) Attorney Maureen J. Rosette represents Summer E. Atkinson (Plaintiff); Special Assistant United States Attorney Benjamin J. Groebner represents the Commissioner of Social Security (Defendant). The parties have consented to proceed before a magistrate judge. (ECF No. 7.) After reviewing the administrative record and briefs filed by the parties, the court **GRANTS** Defendant's Motion for Summary Judgment, **DENIES** Plaintiff's Motion for Summary Judgment and directs entry of judgment for Defendant.

**JURISDICTION**

Plaintiff protectively filed for disability insurance benefits (DIB) and for Supplemental Security Income (SSI) on April 11, 2006. (Tr. 165.) She alleged an onset date of October 1, 2005, and her date of last insured was September 30, 2010. (Tr. 164; 178.)

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 1

Plaintiff alleged she is disabled due to chronic obstructive pulmonary disease (COPD), asthma, chronic bronchitis, diabetes, and multiple health issues. (Tr. 177.) Her claim was denied initially and on reconsideration. (Tr. 60; 65.) Plaintiff requested a hearing before an administrative law judge (ALJ), which was held on April 29, 2008, before ALJ R. J. Payne. (Tr. 599-637.) Plaintiff, who was represented by counsel, and medical experts Steven Gerber, M.D., and Marian F. Martin Ph.D., testified at the hearing. (Tr. 603-36.) The ALJ denied benefits on June 13, 2008. (Tr. 39-51.) Later, the Appeals Council denied review. (Tr. 4-7.) The instant matter is before this court pursuant to 42 U.S.C. § 405(g).

**STATEMENT OF THE CASE**

The facts of the case are set forth in detail in the transcript of proceedings and are briefly summarized here. At the time of the hearing, Plaintiff was 43 years old with a high-school education, and some formal education in medical office management (Tr. 618.) She lived in a mobile home with her fourteen-year old daughter. (Tr. 619.) Plaintiff has past work experiences as a retail sales clerk, a custodial worker, assistant manager at a Safeway fuel station, and as a medical/legal transcriptionist. (Tr. 632-35.) Plaintiff testified that she stopped working full time because she got sick, and was later fired. (Tr. 632-33.) Plaintiff is 5'9" and weighs 250 pounds. (Tr. 618.) She testified that she has breathing problems and this prevents her from walking distances and from climbing stairs. (Tr. 621.) Plaintiff also testified that the discs in her back are pinching her sciatica nerve, leaving her leg numb, which causes problems with walking. (Tr. 621.) She stated that despite the surgeries on her wrists, she still has some

numbness, and little strength. (Tr. 622.) Plaintiff testified that she suffers from headaches and migraines, which are sometimes controlled with medicine. (Tr. 623.) Plaintiff also testified that she likely will take antidepressants for the rest of her life as a result of her 20-years of using methamphetamine. (Tr. 624.) Plaintiff detailed the problems she experiences with her stomach, bowels and menstrual cycle. (Tr. 625-27.) Plaintiff said she is unable to shower more than once per week due to dizziness and weakness. (Tr. 627.) She is also unable to do the dishes, cook or clean. (Tr. 628.) She said she can sit for thirty minutes, stand for 10-15 minutes, carry five pounds, and cannot pick up an object from the floor. (Tr. 630.) Finally, Plaintiff testified that she has no hobbies and does not participate in any activities, groups, clubs or church. (Tr. 628.) She spends her day reading novels, helping her daughter with homework and watching television. (Tr. 635-36.)

## STANDARD OF REVIEW

In *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001), the court set out the standard of review:

> A district court's order upholding the Commissioner's denial of benefits is reviewed *de novo*. *Harman v. Apfel*, 211 F.3d 1172, 1174 (9th Cir. 2000). The decision of the Commissioner may be reversed only if it is not supported by substantial evidence or if it is based on legal error. *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is defined as being more than a mere scintilla, but less than a preponderance. *Id.* at 1098. Put another way, substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Morgan v. Commissioner of Social Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999).

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). The ALJ's determinations of law are reviewed *de novo*, although deference is owed to a reasonable construction of the applicable statutes. *McNatt v. Apfel*, 201 F.3d 1084, 1087 (9th Cir. 2000).

It is the role of the trier of fact, not this court, to resolve conflicts in evidence. *Richardson,* 402 U.S. at 400. If evidence supports more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). Nevertheless, a decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1988). If substantial evidence exists to support the administrative findings, or if conflicting evidence exists that will support a finding of either disability or non-disability, the finding of the Commissioner is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987).

**SEQUENTIAL EVALUATION PROCESS**

Also in *Edlund*, 253 F.3d at 1156-1157, the court set out the requirements necessary to establish disability:

> Under the Social Security Act, individuals who are "under a disability" are eligible to receive benefits. 42 U.S.C. § 423(a)(1)(D). A "disability" is defined as "any medically determinable physical or mental impairment" which prevents one from engaging "in any substantial gainful activity" and is expected to result in death or last "for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Such an impairment must result from "anatomical, physiological, or psychological

abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). The Act also provides that a claimant will be eligible for benefits only if his impairments "are of such severity that he is not only unable to do his previous work but cannot, considering his age, education and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . " 42 U.S.C. § 423(d)(2)(A). Thus, the definition of disability consists of both medical and vocational components.

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. §§ 404.1520(a), 416.920(a); *see Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987). In steps one through four, the burden of proof rests upon the claimant to establish a prima facie case of entitlement to disability benefits. *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971). This burden is met once a claimant establishes that a medically determinable physical or mental impairment prevents her from engaging in her previous occupation. 20 C.F.R. §§ 404.1520(a), 416.920(a). "This requires the presentation of 'complete and detailed objective medical reports of his condition from licensed medical processionals.'" *Meanel v. Apfel,* 172 F.3d 1111, 1113 (9th Cir. 1999).

If a claimant cannot do her past relevant work, the ALJ proceeds to step five, and the burden shifts to the Commissioner to show that (1) the claimant can make an adjustment to other work; and (2) specific jobs exist in the national economy which claimant can perform. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *Kail v. Heckler*, 722 F.2d 1496, 1497-98 (9th Cir. 1984).

### ALJ'S FINDINGS

At step one of the sequential evaluation process, the ALJ found Plaintiff has not engaged in substantial gainful activity since

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 5

October 1, 2005, the alleged onset date. (Tr. 41.)  At step two, he found Plaintiff has the following severe impairments: obesity, chronic obstructive pulmonary disease, and degenerative disc disease. (Tr. 41.)  At step three, the ALJ found Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926. (Tr. 48.)  At step four, he found Plaintiff has the residual functional capacity:

> [T]o perform light work as defined in 20 CFR 404.1567(b) . . . except she can lift and carry 10 pounds frequently and 20 pounds occasionally. She can sit 3 hours at a time for a total of 6 hours in an 8-hour day. She can stand and/or walk 1 hour in an 8-hour day for a total of 3 hours in an 8-hour day. She can frequently engage in repetitive activities with the hands and feet, including operation of foot controls, reaching, handling, fingering, feeling, and pushing/pulling. She can occasionally climb stairs and ramps, but should avoid climbing ladders or scaffolds. She should avoid crawling. She can occasionally engage in stooping, kneeling and crouching. She should avoid exposure to dust, odors, fumes, pulmonary irritants, and extreme cold. She can occasionally be exposed to unprotected heights, moving mechanical parts, and extreme heat. She can frequently operate a vehicle, or be in work situations involving humidity, wetness, and vibrations.

(Tr. 49.)  The ALJ found Plaintiff is capable of performing past relevant work as assistant manager/grocery store, gas station and clerk/cashier pursuant to 20 C.F.R. 404.1565 and 416.965. (Tr. 51.)

**ISSUES**

The question is whether the ALJ's decision is supported by substantial evidence and is free of legal error. Plaintiff contends that the ALJ erred by finding her mental impairments were not severe, by rejecting her examining and treating sources and instead adopting the opinion of the reviewing doctor, and by failing to

consult with a vocational expert. (ECF No. 14 at 8-15.) Defendant argues the ALJ correctly determined the RFC, properly considered the opinion evidence, and the ALJ was not required to consult with a vocational expert. (ECF No. 20 at 6-17.)

**DISCUSSION**

**A.   Step Two.**

To satisfy step two's requirement of a severe impairment, the claimant must prove the existence of a physical or mental impairment by providing medical evidence consisting of signs, symptoms, and laboratory findings; the claimant's own statement of symptoms alone will not suffice. 20 C.F.R. § 416.908. The credible medical evidence also must show that the impairment (1) causes functional limitations that have more than a minimal effect on Plaintiff's ability to do work activities, and (2) last more than 12 months. 20 C.F.R. §§ 404.1509, 416.909; Social Security Ruling (SSR) 96-03. The fact that a medically determinable condition exists does not automatically mean the symptoms are "severe," or "disabling" as defined by the Social Security regulations. See, e.g., *Edlund,* 253 F.3d at 1159-60; *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). An impairment may be found to be "non-severe" when evidence establishes a slight abnormality that has no more than "a minimal effect on an individual's ability to work." SSR 85-28.

In determining whether a claimant has a severe impairment the ALJ must evaluate the medical evidence submitted and explain the weight given to the opinions of accepted medical sources in the record. The regulations distinguish among the opinions of three types of accepted medical sources: (1) sources who have treated the claimant; (2) sources who have examined the claimant; and (3)

sources who have neither examined nor treated the claimant, but express their opinion based upon a review of the claimant's medical records. 20 C.F.R. § 416.927.  A treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a non-examining reviewing or consulting physician's opinion. *Benecke v. Barnhart*, 379 F.3d 587, 592 (9th Cir. 2004); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).

In addition, courts have upheld an ALJ's decision to reject the opinion of an examining physician based in part on the testimony of a non-examining medical expert. *Lester*, 81 F.3d at 831. The analysis and opinion of an expert selected by the ALJ may be helpful in his adjudication, and the court should not second guess the ALJ's resolution of conflicting medical testimony. *Andrews*, 53 F.3d at 1041, citing *Magallanes v. Bowen*, 881 F. 2nd 747, 753 (9th Cir. 1989).  Further, testimony of a medical expert may serve as substantial evidence when supported by and consistent with other evidence in the record. *Id.*

Even though medical evidence only is considered at step two, credibility is an appropriate factor to consider in evaluating the medical evidence submitted. When there are conflicts in the various medical reports submitted or questions of credibility, it is the responsibility of the ALJ to resolve those conflicts. *Thomas v. Barnhart*, 278 F.3d 947, 956 (9th Cir. 2002).  Where the evidence is susceptible to more than one rational interpretation, the findings of the ALJ will be upheld. *Id*. at 954.  While the analysis and opinion of an expert selected by an ALJ may be helpful in his adjudication, the ALJ's resolution of conflicting medical testimony

is not dependent upon the medical expert's testimony. *Id.* The ALJ is not required to substitute the judgment of a medical expert for his own. *Id.*; see also 20 C.F.R. § 416. 927(e)(2) (no special significance given to medical opinions on issues of severity of impairment or RFC).

Plaintiff contends that the ALJ erred by finding that her mental impairments were not severe. (ECF No. 14 at 8.) Specifically, Plaintiff argues that the evaluations of Jay M. Toews, Ph.D., on February 6, 2007, James Pittman, Ph.D., on April 3, 2006, Abigail Osborne-Elmer, MS, on March 31, 2006, joined by Kayleen Islam-Zwart, Ph.D., and John Arnold, Ph.D., on May 9, 2008, provided ample evidence consisting of signs, symptoms, and laboratory findings proving her severe mental impairment, and the ALJ's reliance on Dr. Martin was error.

The ALJ's conclusion that no severe mental impairment existed is supported by the record. For example, in February 2006, Dr. Toews diagnosed Plaintiff, in part, with adjustment disorder with anxiety, depression and somatic symptoms, but he noted Plaintiff's test scores revealed good cognitive and memory functioning, and he "strongly suspect[ed] symptom embellishment and disability seeking motivation" by Plaintiff. (Tr. 191-92.) Because Dr. Toews' conclusions were based upon Plaintiff's exaggerated self-reports, credible medical evidence does not support these diagnoses.

In March 2006, Dr. Pittman completed a DSHS Physical Evaluation form diagnosing depression and anxiety, and noting that a psychological evaluation was needed. (Tr. 227-28.) Dr. Pittman opined that Plaintiff would be limited to sedentary work, but the limitations on work activities would last only 60 days without

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 9

treatment.[1] (Tr. 229.) Dr. Pittman's opinion did not meet the threshold test that to be considered severe, an impairment must be expected to last more than twelve months. Thus, this diagnosis does not support Plaintiff's argument that her mental impairments are severe.

In May 2006, Ms. Osborne-Elmer, and Dr. Islam-Zwart diagnosed Plaintiff in part with undifferentiated somatoform disorder and adjustment disorder with mixed anxiety and depressed mood. (Tr. 251.) The evaluation noted it was difficult to determine if the symptoms were independent of her abstaining from drug use and because Plaintiff was not taking antidepressants, Ms. Osborne-Elmer recommended Plaintiff seek medication to alleviate her symptoms. (Tr. 252.) If Plaintiff's mental impairments could be remedied with medication, these impairments would not be considered severe and Plaintiff's argument to the contrary fails. *Warre v. Commissioner of Social Security,* 439 F.3d 1001 (2006) (impairments that can be controlled effectively with medication are not disabling).

Finally, after the hearing John Arnold, Ph.D., evaluated Plaintiff and concluded the test results indicated she over-reported and embellished her psychological problems. (Tr. 529.) Nevertheless, Dr. Arnold diagnosed Plaintiff with undifferentiated somatoform disorder, major depressive disorder, recurrent moderate to severe anxiety disorder NOS with generalized features and borderline personality disorder with dependent and antisocial

---

[1] It appears the physical limitations assessed by Dr. Pittman were based upon Plaintiff's recent bout with bronchitis and overuse of her wrist after her surgery. (Tr. 229.)

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 10

features. (Tr. 531.) Evaluations conducted after an ALJ's adverse disposition are highly questionable. See *Weetman v. Sullivan*, 877 F.2d 20, 23 (9th Cir. 1989)(new medical report following adverse administrative decision denying benefits carries little, if any, weight); *Vincent v. Heckler*, 739 F.2d 1393, 1395 (9th Cir. 1984)(retroactive psychiatric opinions are "notoriously unreliable"). The record supports the ALJ's conclusion that Dr. Arnold's post-hearing evaluation was internally inconsistent and his diagnosis was supported by invalid test results that indicated exaggeration of symptoms and, thus, the ALJ reasonably gave no weight to Dr. Arnold's opinions. (Tr. 47.)

Independent review reveals that the ALJ considered all probative medical evidence. As discussed below, the ALJ gave legally sufficient reasons for the weight given acceptable medical source opinions. The ALJ's reasoning is supported by substantial medical evidence in the entire record, as well as inferences "logically flowing from the evidence." *Sample*, 694 F.2d at 642. Thus, Plaintiff's argument that the ALJ erred by failing to find she had a severe mental impairment fails.

**B.   Evaluation of Medical Opinions**

Plaintiff maintains that the ALJ erred by relying on Dr. Martin's testimony, and failed to provide reasons for rejecting the examining and treating sources regarding her mental impairments. (ECF No. 14 at 9.) The Commissioner must provide "clear and convincing" reasons for rejecting uncontradicted opinions of a treating or examining physician. *Lester*, 81 F.3d at 830 (citation omitted). If the opinion is contradicted, it can only be rejected for "specific" and "legitimate" reasons that are supported by

substantial evidence in the record. *Andrews*, 53 F.3d at 1043. The ALJ can meet this burden by giving a detailed and thorough summary of the facts and conflicting clinical evidence, state his interpretation of the evidence, and make findings. *Thomas*, 278 F.3d at 957. In any case, the ALJ is not obliged to accept the opinion of a medical source if the opinion is inadequately supported by clinical findings. *Thomas*, 278 F.3d at 956.

Here, after a thorough summary of the medical evidence, the ALJ gave specific and legitimate reasons for rejecting the medical source opinions that Plaintiff's mental impairments caused more than minimal limitations in her cognitive and social functioning.

**1.   Jay Toews, Ph.D.**

The ALJ discussed in detail Dr. Toews' report from his March 2007 evaluation of Plaintiff. (Tr. 44-45.) Dr. Toews' testing revealed Plaintiff is of average intelligence, has excellent ability to sustain attention and concentration, has consistent pace and was persistent on tasks. (Tr. 45; 190-91.) She also demonstrated good cognitive and memory functioning, and no indication existed that these functions were compromised by mood or affect. (Tr. 45; 191.) Dr. Toews strongly suspected symptom embellishment, and he concluded that Plaintiff was fully competent to function in a wide variety of jobs limited only by exertional factors. (Tr. 45.) Dr. Toews' evaluation does not conflict with the ALJ's determination that Plaintiff can perform light work with certain limitations.

**2.   James Pittman, Ph.D. ARNP**

The ALJ also addressed Dr. Pittman's April 2008 evaluation that indicated Plaintiff could lift and carry 20 pounds occasionally and 10 pounds frequently. (Tr. 45; 474.) Dr. Pittman opined that

Plaintiff should limit her standing and walking to two hours or less in an eight-hour day, and that she would need to alternate standing and sitting to relieve back spasms. (Tr. 45; 475.) Dr. Pittman also noted limitations in pushing and pulling in the lower extremities, and she should never climb, crawl or stoop. (Tr. 45; 475-76.) The postural limitations in the RFC and Dr. Pittman's recommendations are similar, but not identical. (Tr. 49; 475.)

Plaintiff's RFC indicates that she can stand/walk for one hour at a time, for a total of two hours in an 8-hour workday, and Dr. Pittman indicated Plaintiff can stand/walk for less than two hours in an 8-hour day. (Tr. 49; 474.) Under the RFC, Plaintiff can sit for three hours at a time, and Dr. Pittman indicates Plaintiff must alternate sitting and standing, without specific reference to time limitations. (Tr. 49; 475.) In sum, Dr. Pittman's evaluation does not contradict the ALJ's determinations that Plaintiff can perform light work, with certain limitations.

**3. Abigail Osborne-Elmer, MS and Kayleen Islam-Zwart, Ph.D.**

The ALJ reviewed the evaluation from Abigail Osborne-Elmer, MS and Kayleen Islam-Zwart, Ph.D. (Tr. 42-43; 248-56.) The report noted Plaintiff complained of severe depression, but they could not determine if Plaintiff's mood and anxiety symptoms were independent of her substance use. As noted bu the ALJ in his reasoning, Plaintiff reported to the evaluators that her most significant barrier to employment was primarily physical in nature, and the doctors recommended a physical evaluation. (Tr. 43; 252.) The ALJ noted that the somatoform disorder diagnosis was apparently based on MMPI results, but that diagnosis requires either the physical symptoms cannot be fully explained by a medical condition or the

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 13

symptoms are in excess of a physical exam or lab findings. Dr. Martin, the testifying medical expert, opined that somatoform disorder should be "ruled out." (Tr. 46; 497.) The reasons provided by the ALJ for discounting Ms. Osborne-Elmer and Dr. Islam-Zwart's opinion and diagnosis were specific and legitimate. The ALJ did not err.

### 4. John Arnold, Ph.D.

Finally, the ALJ reviewed the post-hearing evaluation by John Arnold, Ph.D. (Tr. 46-47.) As stated above, the ALJ gave no weight to Dr. Arnold's assessment because his opinions were based upon both test results that suggested symptom embellishment and the self-reporting of a non-credible Plaintiff, and thus his conclusions were internally inconsistent. (Tr. 47-48.)

The record supports the ALJ's conclusions. Plaintiff's results from one test administered by Dr. Arnold were invalid due to over reporting of her psychological difficulties and another test suggested symptom embellishment. (Tr. 529.) Additionally, Plaintiff's diagnosis was based largely on self-reporting, and the ALJ determined Plaintiff was determined to be a non-credible source. Plaintiff does not challenge the credibility determination. Finally, the ALJ noted that despite Plaintiff's average memory functioning, intact attention and concentration, Dr. Arnold concluded Plaintiff was significantly limited in those areas. (Tr. 48; 529-30; 533.) These constitute specific and legitimate reasons for rejecting Dr. Arnold's diagnosis.

### C. Vocational Expert Testimony

Plaintiff argues that the ALJ was required to call a vocational expert because both Dr. Gerber and Dr. Pittman opined that Plaintiff

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 14

has non-exertional[2] limitations that would "restrict [her] work capacity." (ECF No. 14 at 15.) Plaintiff relies on *Polny v. Bowen*, 864 F.2d 661 (9th Cir. 1988) to support her argument that vocational expert testimony was necessary prior to determining if Plaintiff can engage in her past work. In *Polny*, the issue was whether the ALJ erred by failing to call a vocational expert where the plaintiff's impairment – a severe psychiatric disability – was nonexertional. *Polny*, 864 F.2d at 663. The *Polny* court held that where nonexertional impairments are severe enough to limit the range of work, then the testimony of a vocational expert is necessary to identify specific jobs within the claimant's abilities. *Polny*, 864 F.2d at 663-64.

*Polny* is distinguishable. In this case, unlike *Polny,* Plaintiff has failed to establish that her nonexertional impairments limited her range of work. Plaintiff noted the slight differences of opinions from Drs. Gerber and Pittman related to nonexertional limits, and summarily concluded "[t]hese nonexertional limitations would also restrict Ms. Atkinson's work capacity." (ECF No. 14 at 15.)

Non-exertional limitations "affect your ability to meet the demands of jobs other than the strength demands, that is, demands other than sitting, standing, walking, lifting, carrying, pushing or pulling . . . ." 20 C.F.R. § 404.1569a. In this case, the ALJ

---

[2]In support of her argument, Plaintiff cites examples of both exertional and non-exertional limitations expressed by Drs. Gerber and Pittman. (ECF No. 14 at 14.) The context of the argument requires an analysis of only the non-exertional impairments.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 15

found that Plaintiff's non-exertional limitations included: (a) frequent engaging in repetitive hand and feet activities, including reaching, handling, fingering, feeling, along with frequent operation of a vehicle; (b) occasional climbing of stairs and ramps, stooping, kneeling, and crouching, exposure to humidity, wetness, vibration, unprotected heights, moving mechanical parts and extreme heat; and (c) avoiding ladders, scaffolds and crawling, dust, odors, fumes, pulmonary irritants, and extreme cold. (Tr. 49.)

Where a claimant's only limitation is in climbing and balancing, such a limitation does not ordinarily have a significant impact on the occupational base. SSR 85-15. If a claimant can stoop, crouch and kneel occasionally to lift objects, the light occupational base is "virtually intact." *Id.* Additionally, a claimant must have "significant limitations" of reaching or handling to eliminate a large number of occupations. *Id.* Finally, where a claimant should avoid excessive noise or dust or environmental pollutants, the impact on the occupational base is minimal because "most job environments do not involve great noise, amounts of dust, etc." *Id.*

Plaintiff has not shown her nonexertional limitations significantly erode the occupational base. The record reveals Plaintiff has mild restrictions in postural limits and exposure to environmental elements. (Tr. 474-77; 507-12.) Plaintiff reported the only nonexertional requirement of her former job as assistant manager of a fuel station was reaching for two hours per day. (Tr. 168-69.) Plaintiff's RFC allows her to return to this work. Because Plaintiff failed to establish that she could not return to her prior occupation, the ALJ was neither required to call a

vocational expert nor required to proceed to step five.[3] *Matthews v. Shalala*, 10 F.3d 678, 681 (1993).

## CONCLUSION

The record supports the ALJ's determination that Plaintiff's mental impairments are mild and therefore properly were characterized as non-severe. 20 C.F.R. §§ 404.1520a(d)(1), 416.920a(d)(1); *Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir. 1996). The ALJ properly weighed the treating and examining physicians' opinions and gave specific and legitimate reasons for rejecting treating and examining source opinions. Finally, the ALJ was not required to consult with a vocational expert. The ALJ's

---

[3]At step five, the ALJ took judicial notice that:

> [V]ocational experts have historically and routinely testified in prior hearings that, given an individual with the same age, education and work experiences as the claimant in this case, the types of exertional and non-exertional limitations which are present in the case at hand would not significantly erode the job base at the light levels.

(Tr. 52.) Vocational expert testimony is not a proper subject to be administratively or judicially noticed, is inadequate to satisfy a step five requirement for vocational expert testimony, and is contrary to the Commissioner's policy. SSR 83-10; SSR 83-12. In this case, however, because step five was unnecessary, the error was harmless. See *Stout v. Commissioner Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006) (recognizing application of harmless error in Social Security context where a "mistake was nonprejudicial to the claimant or irrelevant to the ALJ's ultimate disability conclusion.").

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 17

1 determination of non-disability is supported by substantial evidence
2 and free of legal error.  Accordingly,
3     1.   Defendant's Motion for Summary Judgment **(ECF No. 19)** is
4 **GRANTED.**
5     2.   Plaintiff's Motion for Summary Judgment **(ECF No. 13)** is
6 **DENIED.**
7     The District Court Executive is directed to file this Order and
8 provide a copy to counsel for Plaintiff and Defendant. Judgment
9 shall be entered for Defendant, and the file shall be CLOSED.
10     DATED November 21, 2011.

                    <u>S/ CYNTHIA IMBROGNO</u>
                  UNITED STATES MAGISTRATE JUDGE